OPINION
{¶ 1} Gregory McCullar was found guilty by a jury in the Montgomery County Court of Common Pleas of aggravated robbery with a three-year firearm specification for having a firearm under his control. He was acquitted of aggravated murder and a five-year firearm specification for discharging a firearm from a motor vehicle. He was sentenced to nine years of incarceration for aggravated robbery and to three years for the firearm specification. He appeals from his conviction.
 {¶ 2} McCullar was tried with a co-defendant, Antwan Reid, whose appeal we have already considered. State v. Reid, Montgomery App. No. 19352, 2003-Ohio-4087. As stated in that opinion, the state's evidence established the following facts.
 {¶ 3} On the afternoon of December 15, 2000, at approximately 4:00 p.m., the victim, Wilton Williams, pulled into an alley near the intersection of East Fifth Street and Henry Street in Dayton in his burgundy Cadillac. Shortly thereafter, a green Dodge Stratus also pulled into the alley. Two men stepped from the Stratus and opened fire on Williams at close range as he sat in his car. Williams managed to drive his car out of the alley onto Keowee Street, and the two assailants jumped back into the green Stratus and followed him. Williams collided with another vehicle on Keowee, at which point the two assailants again jumped out of their car and reached into Williams' car, grabbing some money. They then fled from the scene. Williams died a short time later from multiple gunshot wounds. Witnesses from the scenes of the shooting and of the accident provided the license plate number for the green Stratus. One witness who knew McCullar positively identified him as having been in a green Stratus in the vicinity of the shooting around the time of the shooting. Several other witnesses to the shooting identified McCullar as possibly having been one of the men involved. Reid was also identified, and some witnesses stated that there had been a third man in the backseat of the Stratus.
 {¶ 4} Police determined that the green Stratus was a rental car that had been leased by Latosha Gladden. McCullar's fingerprints were found on the rear exterior of the Stratus. When the investigation by the Dayton Police Department led to McCullar, he stated during an interview, "I didn't mean to kill that man. It was just supposed to be a robbery." He then asked for an attorney.
 {¶ 5} On June 25, 2001, McCullar and his co-defendant, Reid, were indicted for aggravated murder and aggravated robbery with multiple firearm specifications. After a five-day trial, McCullar was found guilty of aggravated robbery with a firearm specification, but he was found not guilty of aggravated murder. Reid was found guilty of aggravated murder and aggravated robbery, along with a firearm specification.
 {¶ 6} McCullar raises two assignments of error on appeal. We will address the assignments in the order that facilitates our discussion, rather than the order in which they are presented.
 {¶ 7} "II. THE DEFENDANT-APPELLANT'S SIXTH AMENDMENT RIGHT TO CONFRONT WITNESSES AGAINST HIM WAS VIOLATED BY THE STATE'S USE OF HEARSAY TESTIMONY AND INFERENCES OF STATEMENTS MADE TO POLICE BY NON-TESTIFYING WITNESSES PATRICIA WOODS AND LATOSHA GLADDEN IMPLICATING THE DEFENDANT-APPELLANT IN THE CRIME OF AGGRAVATED ROBBERY, WHICH ALSO VIOLATED HIS RIGHT TO A FAIR TRIAL AND VIOLATED ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION."
 {¶ 8} McCullar claims that he was prejudiced by the prosecutor's opening statement because it referred to evidence that was never presented. He also contends that inadmissible hearsay evidence was admitted through the testimony of one of the police officers. Both of these arguments relate to information that was obtained by the police from Patricia Woods and from the lessee of the Stratus, Latosha Gladden. Both of these women invoked their Fifth Amendment right not to incriminate themselves and refused to testify at McCullar's trial.
 {¶ 9} In opening argument, before Woods refused to testify, the prosecutor suggested that the following evidence would be offered through her testimony. The victim, Williams, loaned money to people in the community and, at the time of the shooting and robbery, Woods had owed money to Williams on a loan. Woods "hung out" with Reid and McCullar, among others, and that group was "out to get money without doing any type of legitimate work for it." In furtherance of this goal, Woods set up a meeting with Williams at the scene of the shooting under the guise of making a payment on her loan. Woods had been in the Stratus with Reid and McCullar around the time of the shooting and had been dropped off to meet Williams. In other words, Woods' testimony was expected to establish how she, Reid, and McCullar had planned the robbery. Because Woods refused to testify, several pieces of this scenario were never established by evidence offered at trial. McCullar claims he was prejudiced by the "back door" manner in which this evidence was presented and by his inability to cross-examine Woods.
 {¶ 10} The state concedes that the challenged portion of the opening statement was unsupported by the evidence, and therefore improper, but claims that the error was harmless. We agree. The jury was properly instructed that opening statements are not evidence. Moreover, Woods' proffered testimony went primarily to motive, and proof of motive is not a necessary element of aggravated robbery. Woods' proffered testimony did implicate McCullar in the crime, but it was harmless in this respect because of McCullar's own statement to the police indicating his involvement and the fact that he appears to concede in his first assignment of error that he was present in the Stratus at the time of the shooting and robbery.
 {¶ 11} McCullar also objects to the testimony of one of the detectives about his investigation of the case. It was clear from the detective's testimony that McCullar and Reid became suspects based on conversations with Woods and Latosha Gladden, whose car had been used in the crimes, and that he had prepared photo arrays including their pictures based on these conversations. McCullar claims that the detective's testimony was hearsay and violated his Sixth Amendment right to confront the witnesses against him. The testimony in question was not hearsay because the detective did not reveal any statements made to him by Woods or Gladden. See Evid.R. 801(C). Rather, the testimony indicated what the detective did in response to the information he obtained from Woods and Gladden. The detective was entitled to testify regarding the course of his investigation.
 {¶ 12} McCullar also claims, without elaboration, that Eugene Graves' invocation of his Fifth Amendment right not to testify unfairly inculpated McCullar in the eyes of the jury. Graves was alleged to have been in the Stratus at the time of the crimes, and there was conflicting evidence as to whether Graves or McCullar had been in the back seat. Graves was called by McCullar "essentially as a physical exhibit" to compare his physical attributes to those of McCullar and Reid. Reid's attorney then asked him a question that Graves refused to answer onFifth Amendment grounds. Graves' refusal to testify bore only on his own involvement in the crimes and did not necessarily inculpate McCullar.
 {¶ 13} Finally, McCullar claims that he was denied his right to confront witnesses because Woods, "a co-defendant who did not testify," implicated him in the crime and he was unable to cross-examine her. We have already addressed the fact that some of the statements provided to the police by Woods were before the jury despite the fact that she did not testify, and we rely on our previous discussion in response to this argument. Moreover, we note that Woods was not a co-defendant of McCullar, and thus the rule that protects co-defendants from one another's incriminating statements did not apply to her. See Bruton v.United States (1968), 391 U.S. 123, 88 S.Ct. 1620; State v. Reid, Montgomery App. No. 19352, 2003-Ohio-4087.
 {¶ 14} The second assignment of error is overruled.
 {¶ 15} "I. THERE WAS INSUFFICIENT EVIDENCE TO SUPPORT DEFENDANT-APPELLANT'S CONVICTION FOR AGGRAVATED ROBBERY WHICH WAS COMPOUNDED BY DEFENSE COUNSEL'S FAILURE TO REQUEST AN APPROPRIATE AIDING AND ABETTING INSTRUCTION STATING THAT THE MERE PRESENCE AT THE SCENE IS INSUFFICIENT TO ESTABLISH GUILT, VIOLATING DEFENDANT-APPELLANT'S SIXTH
AND FOURTEENTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION."
 {¶ 16} McCullar argues that there was insufficient evidence to support his conviction or, in the alternative, that his conviction was against the manifest weight of the evidence. He also claims that the trial court should have made it more clear to the jury in its jury instructions that one's mere presence at the scene of a crime is insufficient to prove that one aided and abetted the crime.
 {¶ 17} The sufficiency of the evidence analysis and the weight of the evidence analysis are distinct. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson
(1955), 162 Ohio St. 486. In considering the sufficiency of the evidence, the pivotal question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. When a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 18} McCullar appears to concede that he was present at the shooting and robbery of Williams, but he maintains that he was the person sitting in the backseat of the Stratus about whom several witnesses testified, that he did not fire any shots at Williams, and that he was not one of the men who jumped out of the Stratus to rob Williams as he died. The state contends that a rational trier of fact could have found McCullar guilty of aggravated robbery even based upon his own version of events and from his statement to the police following the robbery. We agree with the state. Even under McCullar's version of events, he was in the Stratus as it approached Williams' car and during the shooting. Moreover, he remained there as the shooters jumped back into the car, chased Williams, got out of the car to rob him, and returned to the car to speed away. There is no evidence that McCullar attempted to flee at any time throughout this course of events, despite the fact that Woods apparently did get out of the car and physically separate herself from the crimes. Moreover, McCullar's statement that it was "just supposed to be a robbery" is evidence that he was complicit in the robbery. Construing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of aggravated robbery to be proven beyond a reasonable doubt. Furthermore, the jury did not clearly lose its way and create a manifest miscarriage of justice in reaching its verdict. Thus, the conviction was neither supported by insufficient evidence nor against the manifest weight of the evidence.
 {¶ 19} McCullar also contends that the trial court erred in failing to instruct the jury that his "mere presence" at the crime was insufficient to establish that he had aided or abetted in the offense. The trial court did instruct that "[a] person's mere association with participants in a crime is not alone sufficient to prove he aided or abetted the crime." In our view, this instruction was adequate and proper under the facts of this case.
 {¶ 20} The first assignment of error is overruled.
 {¶ 21} The judgment of the trial court will be affirmed.
FREDERICK N. YOUNG, J. and WILLIAM W. YOUNG, J., concur.